UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:22-cr-00063 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | |
| TYE DEAN LEWIS ROSS CODY, | |
| Defendant. | |

**OPINION AND ORDER**

Defendant Tye Dean Lewis Ross Cody was involved in a car collision that caused the death of Leonard Logan Ladd. As a result, the United States charged Mr. Cody with second-degree murder and involuntary manslaughter. At trial, the jury acquitted Mr. Cody on the murder charge, but could not reach a unanimous decision on the manslaughter charge, resulting in a mistrial. A second trial is set for October 31, 2022. In advance of that trial, the United States has filed two pretrial motions: (1) a renewed motion to determine Indian Country as a matter of law (ECF No. 104); and (2) an omnibus motion *in limine* (ECF No. 102). For the reasons that follow, the Court **GRANTS** the renewed motion to determine Indian Country as a matter of law, and **GRANTS IN PART, DENIES IN PART, AND DEFERS IN PART** the omnibus motion *in limine*.

**FACTUAL BACKGROUND**

On a foggy morning in May 2020, Tye Dean Lewis Ross Cody drove his vehicle northbound on U.S. highway 169. Reports indicate that Mr. Cody was speeding. The

United States alleges that Mr. Cody attempted to pass another vehicle in a no-passing zone and collided head-on with Ladd, who was traveling southbound on U.S. Highway 169. Following the collision, the United States charged Mr. Cody with second-degree murder and involuntary manslaughter. ([ECF No. 35](#).)

## ANALYSIS

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citations omitted). "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotations omitted). While pretrial *in limine* rulings can save time and avoid interruptions at trial, a court is almost always better situated during the actual trial to determine the probative value of evidence. *See id.* (citations omitted). Therefore, courts are reluctant to enter pretrial rulings which broadly exclude evidence, unless "the evidence [is] inadmissible on all potential grounds." *United States v. Coulter*, No. CR-18-156-D, 2019 WL 3069422, at *2 (W.D. Okla. July 12, 2019) (quoting *Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be

resolved in proper context." *Id.* (citation omitted).  Further, a court's *in limine* rulings are preliminary and subject to change as the case unfolds.  *Luce*, 469 U.S. at 41–42.

I. **Motion to Determine Indian Country as a Matter of Law**

The United States asserts that the area where the collision occurred, U.S. Highway 169 between County Road 5 and County Road 6 in Nowata County, Oklahoma, lies within the boundaries of the Cherokee Nation.  (ECF No. 104, at 1.) Therefore, the United States argues, the collision occurred within Indian Country as defined in 18 U.S.C. § 1151(a).  (*Id.*)  Defendant opposes the motion.

"Indian Country" means "all land within the limits of any Indian reservation under the jurisdiction of the United States Government."  18 U.S.C. § 1151(a).  A "district court can find, as a matter of law, a geographic area or particular location is Indian Country, and then instruct the jury to determine factually whether the offense occurred there." *United States v. Roberts*, 185 F.3d 1125, 1140 (10th Cir. 1999).  The party seeking to invoke the jurisdiction of a federal court must demonstrate by a preponderance of the evidence that the case is within the Court's jurisdiction.  *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994).

Before the first trial, the Court ruled that the intersection between U.S. Highway 169 and County Road 6 lies within Indian Country.  (ECF No. 66, at 3.) During trial, however, the evidence demonstrated that the collision occurred at U.S. Highway 169 between County Road 5 and County Road 6.  (ECF No. 98, at 51–52.) The United States now seeks to determine that this different area of U.S. Highway 169 is part of Indian Country.  In support, the United Stated submitted a map of the Cherokee Nation which shows that U.S. Highway 169 between County Road 5 and

3

County Road 6 lies within the boundaries of the Cherokee Nation. (ECF No. 104, at 6–8.) The Court finds that the United States has carried its burden of showing by a preponderance of the evidence that the collision occurred within Indian Country. Therefore, the Court **GRANTS** the United States' motion to determine Indian Country as a matter of law. As the Court stated in its previous Order, however, the jury has the responsibility of determining whether a criminal offense occurred during the collision. (*See* ECF No. 66, at 3.)

## II.     Motion *in Limine*

The United States seeks to exclude several items of evidence that were admitted during the first trial. The Court addresses each in turn.

### II.A.   Specific Reference to Mr. Cody's First Trial

The United States seeks to prohibit any reference to the previous trial in this case. (ECF No. 102, at 2–4.) When referring to any testimony or evidence from the first trial, the United States requests that the term "prior proceeding" be used. (*Id.* at 4.) Defendant does not object to use of the term "prior proceeding." (ECF No. 106, at 1.) Therefore, the Court **GRANTS** the United States' motion *in limine* to prohibit reference to Mr. Cody's previous trial. The Court prefers to reference "prior testimony" as opposed to a "prior proceeding," but the Court agrees that there should be no reference to the prior trial.

### II.B.   Evidence Regarding Mr. Cody's Mental State

The United States seeks to prohibit evidence regarding Mr. Cody's mental state at the time of the collision—the central item in dispute at trial. (ECF No. 102, at 4–7.)

4

### II.B.1. Expert Testimony Referencing Mr. Cody's Mental State

First, the United States seeks to prohibit expert testimony regarding Mr. Cody's mental state at the time of the collision. The United States takes issue with a line of questioning defense counsel posed to its expert, Robert Painter. Specifically, defense counsel asked: "As a highway patrol, as an expert for 53 years, is there anything that shows extreme recklessness." (ECF No. 102, at 5.)

Rule 704(b) prohibits an expert witness from stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." However, "Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's actual mental state. The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *United States v. Richard*, 969 F.2d 849, 854–55 (10th Cir. 1992).

At trial, Painter did not testify to Mr. Cody's mental state or an element of the crime charged. Instead, the record shows that the testimony the United States challenges relates to the actions of a driver. Indeed, the United States leads with one question defense counsel asked: "Is there anything about Mr. Cody's *actions* that show extreme recklessness?" (ECF No. 102, at 4 (emphasis added).) Involuntary manslaughter requires proof beyond a reasonable doubt that the defendant acted with "gross negligence amounting to wanton and reckless disregard for human life." 10th Cir. Crim. Pattern Jury Instr. 2.54.1. To be sure, Painter may not testify that Mr. Cody disregarded human life or acted with gross negligence. But he may opine, consistent with his experience in the field of accident reconstruction, about Mr. Cody's

5

actions. The line between describing the actions of a driver based on the physical evidence and mental state might be a fine one at times, and the Court will police it at trial, but the testimony the United States cites falls on the proper side of the line, if narrowly. Finally, although the actions of drivers are well within the experience of a jury, Painter's testimony is still helpful for the jury. *See* Fed. R. Evid. 702. Therefore, the Court **DENIES** the United States' motion *in limine* on this basis.

### II.B.2. Lay Witness Testimony on Mr. Cody's Mental State

Similarly, but on a different legal basis, the United States seeks to exclude lay witness testimony referencing Mr. Cody's mental state at the time of the collision. Specifically, Anthony Carroll whose car Mr. Cody clipped as he tried to pass before striking Ladd's truck head on testified that Mr. Cody might have been scared during the moments leading up to the collision. This testimony stems from a conversation Carroll had with police officers after the collision. The United States argues for the exclusion of this testimony at the upcoming trial because Carroll lacks personal knowledge of Mr. Cody's state of mind and based on hearsay. For two reasons, the Court disagrees with the United States regarding the admissibility of this evidence.

First, Carroll's testimony involves one driver describing the actions of another. Carroll has first-hand knowledge of what he saw. This testimony is well within his personal knowledge as Rule 602 requires. People frequently describe the actions of drivers in terms evocative of state of mind or intention. Such testimony does not make the testimony excludable. The jury is familiar with this mode of expression within its common experience and is entitled to evaluate such descriptions as the finder of fact.

Second, the testimony is not hearsay. The testimony was not offered to show that Mr. Cody was in fact scared, but instead to provide evidence about how the accident occurred. Indeed, the testimony is closely tied to the physical actions of the vehicles at the scene of the collision. Although defense counsel questioned Carroll about the statement he provided officers at the scene, he did so as proper impeachment.

For these reasons, the Court **DENIES** the United States' motion *in limine* on this basis.

### II.C.  Conduits for Hearsay

The United States asserts that defense counsel "repeatedly used expert witness testimony at the first trial to admit evidence of a Carfax report for the victim's truck and statements that the victim made about a dog over 60 minutes before the crash." (ECF No. 102, at 8.) In its view, such testimony is hearsay and unfairly prejudicial.

#### II.C.1.  Carfax Report

During the first trial, defense counsel questioned an expert of the United States about the conditions of Ladd's vehicle at the time of the collision. In doing so, defense counsel directed the expert's attention to the vehicle's Carfax report. The United States asserts that any reference to the Carfax report should be prohibited at the upcoming trial. In support, the United States relies on the *in limine* ruling before the first trial, which precluded evidence regarding Ladd's toxicology report because "[c]omparative and contributory negligence are not defenses to a criminal charge." (ECF No. 66, at 8.)

The Court agrees that comparative and contributory negligence are not defenses. At the time of the prior *in limine* ruling, however, the Court did not have the benefit of a trial record. Like all pretrial motions *in limine*, that ruling was necessarily tentative and made without the benefit of the evidence presented later. That full record provides sufficient support under Rule 401 for the testimony of the condition of the truck at the first trial. As Defendant points out, the United States opened the door to this testimony. Nor is that evidence unfairly prejudicial and presents no risk of confusing the jury. But the Court agrees with the United States that the Carfax report itself is hearsay. At the upcoming trial, if the United States again opens the door, it would make testimony about the Carfax report relevant. Accordingly, the Court **DEFERS** ruling on this issue until the upcoming trial.

### II.C.2. Ladd Phone Call Before the Collision

The United States argues that evidence of a phone call Ladd made about an hour before the collision is irrelevant, inadmissible hearsay, and unfairly prejudicial. (ECF No. 102, at 11–13.) In response, Defendant argues that the United States opened the door to such evidence. (ECF No. 106, at 4–5.)

The Court agrees with the United States and finds that evidence of the phone call is inadmissible under Rule 401. As Defendant points out, however, an expert the United States presented at trial opined that Ladd was operating his vehicle in a safe and lawful manner at the time of the collision. (*See* ECF No. 99, at 92; ECF No. 106, at 5.) That opinion opened the door to evidence of the phone call. For this reason, the Court **DEFERS** ruling on this issue until the upcoming trial when it will have the benefit of a full trial record in which to evaluate the parties' argument properly.

### II.D. Carroll's Statements at the Scene of the Collision

The United States argues that statements Carroll made at the scene of the collision should be excluded on three grounds. The Court addresses each in turn.

#### II.D.1. Prior Inconsistent Statement

First, the United States argues that Carroll's statements at the scene of the collision are not inconsistent with his trial testimony. (ECF No. 102, at 14–16.) Specifically, the United States asserts that Defendant mischaracterized Carroll's statements as a mechanism for impeachment. Both parties direct the Court to points in the trial transcript that support their respective arguments. While the Court agrees with the United States that prior inconsistent statements may be used to impeach a witness only if "the statements are indeed inconsistent[,]" *United States v. Hale*, 422 U.S. 171, 176 (1975), this issue is better addressed at trial so that the Court can analyze it in proper context, *see Coulter*, 2019 WL 3069422, at *2.

#### II.D.2. Impeachment

Next, the United States argues that even if Carroll's statements provided a proper basis for impeachment, Defendant "did not follow the correct procedure to admit these statements into evidence because he admitted them as substantive evidence instead of using them for impeach[ment] purposes." (ECF No. 102, at 16.)

Although "counsel may use a prior statement to refresh the recollection of a witness who cannot remember a past event, . . . doing so does not render the document thereby admissible." *United States v. Caraway*, 534 F.3d 1290, 1295 (10th Cir. 2008) (citations omitted). Here, defense counsel failed to follow the proper procedure for refreshing Carroll's recollection of the statements he made at the scene of the

collision, which were captured in an audio recording. "It is the witness' refreshed recollection of the facts, not the contents of the writing [or, in this case, the audio recording] used to refresh the recollection, that is the substantive evidence of fact." *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1123 (D. Colo. 2008) (citing *Rush v. Illinois Cent. R.R. Co.*, 399 F.3d 705, 718 (6th Cir. 2005)).

Because the statements on the audio recording are hearsay, just as a written transcript of those statements would be, in the Court's view Rule 612 provides the proper procedure for using the audio recording to refresh recollection even though it strictly addresses only writings. That is, the best practice is for a witness to read a statement silently to himself, then for counsel to withdraw the writing. *See Caraway*, 534 F.3d at 1295 (citing *New Mexico Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 454 F.2d 328, 337 (10th Cir.1972), and Fed. R. Evid. 612). Therefore, if counsel seeks to use the audio recording and not a transcript of it to refresh Carroll's recollection, he must do so outside the presence of the jury. For these reasons, the Court **GRANTS** the United States' motion *in limine* on this basis.

### II.D.3. Expert Testimony Regarding Carroll's Statements

Lastly, the United States argues that Painter, Defendant's expert witness, testified to Carroll's statements to the officers at the scene of the collision as a purported basis for his expert opinions improperly and inaccurately. (ECF No. 102, at 13–14.) Painter used the audio recordings of Carroll's statements at the scene as a basis for his opinions. The United States seeks to prohibit any mention of Carroll's statements. According to the United States, "the prejudicial effect of allowing the jury to hear Mr. Carroll's hearsay statement as substantive evidence supporting

10

Mr. Painter's reconstruction of the collision outweighed any remote probative value to be had by disclosing the substance of the statement to the jury." (*Id.* at 14.) Defendant does not dispute that Carroll's statements at issue are hearsay. Rather, Defendant argues that Carroll's statements are admissible under Rule 703 because they form the basis of his expert's conclusions. (ECF No. 106, at 5.)

Rule 703 permits an expert to base an opinion on hearsay so long as experts in the field would reasonably rely on the kind of information at issue. Such is the case here. But these otherwise inadmissible bases for an opinion may be disclosed to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. "An expert using hearsay evidence can use the evidence 'to explain how he . . . formed some of his opinions and conclusions'" so long as he does "not offer it 'to prove the truth of the assertions made by the out-of-court declarants.'" *United States v. DeLeon*, 423 F. Supp. 3d 1210, 1241 (D.N.M. 2019) (quoting *United States v. Affleck*, 776 F.2d 1451, 1457 (10th Cir. 1985)). But Rule 703 embodies a presumption against presenting otherwise inadmissible information to the jury through an expert's testimony. Fed. R. Evid. 703 advisory committee's note to 2000 amendment.

Against this backdrop, resolution of this issue is better addressed at trial. Resolving this issue will depend on Carroll's testimony at trial and the parties' examinations of Painter. If Painter may disclose Carroll's statements to the jury pursuant to Rule 703, the Court will give a limiting instruction at the request of the United States. *See* Fed. R. Evid. 703 advisory committee's note to 2000 amendment.

Therefore, the Court **DEFERS** ruling on this issue until trial.

### III. Expert Testimony

Finally, the Court takes this opportunity to address two matters regarding the testimony of any expert at trial.

*First*, an expert may give an opinion only if he holds that opinion to a reasonable degree of professional certainty in the particular field. At the first trial, the record left doubt that any expert testified with this requisite foundation. Failure to express an opinion to a reasonable degree of certainty in the particular field will result in the Court instructing the jury to disregard that opinion and related testimony.

*Second*, in the Court's view, the American Bar Association's Civil Trial Practice Standards represent the best practice for qualifying and examining experts, even in a criminal case. Section 14 of those standards (available at: https://www.americanbar.org/groups/litigation/policy/civil_trial_standards/) provides: "The court should not, in the presence of the jury, declare that a witness is qualified as an expert or to render an expert opinion, and counsel should not ask the court to do so." The comment to that provision explains the reasoning for that practice, drawing on the Advisory Committee Notes. In short, referring to the witness as an expert risks giving undue attention or weight to a particular witness and potentially the Court's imprimatur of his testimony—matters that rest within the exclusive province of the jury as the finder of fact entitled to give as much or as little weight and credibility to the testimony of every witness it chooses, even those testifying in the form of an opinion under Rule 702.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the United States' motion to determine Indian Country as a matter of law.  (ECF No. 104.)  Further, the Court **GRANTS IN PART AND DENIES IN PART** the United States' motion *in limine* and otherwise **DEFERS** the remaining issues until trial.  (ECF No. 102.)

**SO ORDERED.**

Dated:  October 18, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio